Final case this morning is number 18-50713 Duenas v. Texas Department of Criminal Justice and we'll hear from Mr. Mobs. May it please the court, good morning. My name is John Mobs. I represent the appellant Julia Duenas. Ms. Duenas stated as part of her employer's internal investigation of her sexual harassment complaint that she had had consensual sex with a co-worker at the workplace and that statement was false. In fact, she had been sexually assaulted at the workplace. She did later report to her employer that she had been sexually assaulted and of course she testified to the sexual assault. That inconsistency, that prior inconsistent statement did not justify dismissing her sexual harassment suit I think for three important reasons. First, that prior statement was not testimonial. It wasn't sworn to. This is not like the bad faith affidavit cases where someone testifies one way in deposition and then testifies differently in an affidavit. It's just an out of court statement of the type that witnesses are cross-examined upon all the time. Secondly, Ms. Duenas explained the inconsistency. She did not want to admit that she had been raped. She was humiliated. She was embarrassed. She didn't think people would believe her because she had an outside of work relationship with the assailant and she was intimidated by the interviewer. When she tried to tell her story, he interrupted her. He accused her of being naive. He tried to shut her down and she did shut down and blamed herself. And the third reason is that even if we take out the allegations of sexual assault and even if we assume that her testimony in her deposition about being sexually assaulted is false, she has consistently stated to her employer and even to the investigator that she was subjected to unwelcome groping and touching of her private parts at the workplace. And that conduct alone was sufficient to support her sexual harassment suit, independent of whether or not she was sexually assaulted. Well, assuming you're right that there's a fact issue on what actually, on her testimony about what happened, what's the knowledge of the employer that you can point to? TDCJ didn't know about the harassment and there are two points in time when we can show that they did. The first is on October 30th when Ms. Duenas made her first outcry or first complaint to Warden Amonette. He said something like, I knew something was going on. I knew it. I just needed to hear it from you or I just needed to clear that up. So the legal standard here is not just what the employer knows but what the employer knew or should have known. And Warden Amonette's admission that he knew something was going on establishes that the employer knew or at least should have known. But he couldn't have known of the rape allegation because my understanding of the record is that your client had never told anyone about the rape allegation until later. Until later, that's correct. He just knew, he knew there was something happening. Well, I mean, he knew they were dating. Well, that's TDCJ's interpretation of that comment is that, you know, officers are allowed to date each other and sergeants are allowed to date officers. The problem with that interpretation is that it may explain the first part of what Warden Amonette says, I knew something was going on. But it doesn't explain the second part, I needed you to come forward. I needed you to clear that up. There's no reason for a superior officer or a supervisor to say that unless he expects someone to come forward. And he wouldn't expect her to come forward unless he at least knew or suspected there was something inappropriate happening. The second point, I'm sorry, did I interrupt? No, you said there was a second. The second point in time when the employer knew something was going on was, of course, when Ms. Duenas did make her report on October 30th. And at that point, you know, she did complain of unwelcome sexual groping in the workplace. And at that point in time, the employer had the duty to take prompt remedial action, to respond in a way that was reasonably calculated to end the harassment. And TDCJ did not do so. Instead, it, well, it waited 30 days before it interviewed Ms. Duenas. It sent out the interviewer who, I think a reasonable interpretation of the evidence at least, is that the interviewer was there to cover up the harassment, not to learn about the harassment. Because he, again, interrupted her, shut her down, called her names. And there's no indication that during that 30-day period, TDCJ did anything else to separate Ms. Duenas from her harasser. There's no indication that after that, after that interview, and when, again, she did complain that there was unwelcome sexual groping in the workplace, that it did anything after that date to separate her from the harasser, or took any action until sometime in mid-January when it said, when it dismissed the complaint. The harasser went out on family medical leave in late January and ultimately resigned in lieu of discipline. So, but you don't complain of anything that happened to your client because of Mr. Aguilera, or now the other fellow, between October 30th and determined. That's correct. So nothing happened. There's no indication in the record that the harassment continued after her report, but the record does establish, or at least allow a reasonable jury to find, that the action taken by TDCJ was neither prompt action nor remedial action as required when an employer learns of sexual harassment. I'd like to touch briefly on the district judge's reasons for disregarding Ms. Duenas' testimony. He referred to it as self-serving and conclusory. I think it's important for the court to recognize, as it did in the Sierra Pittman construction case, and again, about six weeks ago in a case called Word of Life Church v. State Farm, in which Judge Jones was on the panel. Testimony is not excludable just because it's self-serving. I mean, every witness presents self-serving testimony, or at least every party presents self-serving testimony. That's not a basis for excluding that from evidence. The district judge also referred to her testimony as conclusory. In her testimony, she did describe the sexual assault in some detail. I don't know where the characterization of the testimony as conclusory comes from or what it's intended to mean, but she didn't just say, oh, I was assaulted, oh, I was harassed. I mean, she did give the factual details of what happened to her, sufficient to raise a fact issue for the jury on whether or not she was a victim of sexual harassment. I'll turn very briefly to the retaliation cause of action. There's really no dispute that Ms. Duenas was terminated because of statements she made as part of the EEO investigation. The question is, was she terminated because of the statements she made that she had been harassed, or was she terminated because of the statement that she participated in consensual activity? She did come forward on more than one occasion later to say no, that was not true, it was not consensual. I think that the evidence establishing that she was terminated because of the statements made in that investigation allows the jury to find that she was terminated because of the complaints of harassment and not because of the false statement that she engaged in consensual activity. The person she was complaining about, I mean, he resigned, but he was effectively forced out. I mean, that does counsel a bit against saying it was retaliation when they consistently enforced the no sex at work policy against both complainer and victim. I think that's an issue for the jury. I mean, you know, TVCGA may well argue that at trial, but the evidence is that he resigned in discipline, not that he was going to be terminated if he had not resigned. If there are no other questions, I will return to you your time. Sorry, but I don't think we have questions. Thank you. All right, thank you. Ms. Ray. May it please the court. This court should affirm the trial court's grant of TVCGA's motion for summary judgment because Aaron Arreano was not a supervisor under Title VII, and TVCGA took prompt remedial action as soon as it became aware of Arreano's harassing conduct towards Julia Duenas. Now, before I get into that, just jumping quickly to the self-serving testimony aspect of the argument, while TVCGA agrees with the trial court's ruling that her self-serving testimony without more is not competent summary judgment to show sexual harassment, it's not determinative in this case. This court could find that there is a fact issue but still find that TVCGA did not have the requisite knowledge to impute or to have the requisite knowledge to hold TVCGA liable. When you say you agree with the district court, I mean, it didn't just say it was self-serving. It, I think, was also focused on the inconsistencies. But, I mean, it can't be that a harassment victim's testimony isn't enough if it's self-serving, and often that person's the only one other than the perpetrator who knows what happened. And I agree with that. However, in this situation, she put, Ms. Duenas put forward multiple stories about what occurred. So it's the inconsistencies more than the self-serving nature of it. Yes. And it seemed that when you read her deposition in full, her story kind of changed as the questions, as she was questioned. My concern with that is how much inconsistency. There's always some inconsistencies when you've got people testifying in cases. You know, they gave a report to their employer. Then they get deposed. There's always going to be some inconsistencies. How do you determine how much inconsistency is enough to just discount the testimony? Your Honor, I think that is a difficult question. And that's why TDCJ would ask this Court to focus on the other elements of this case, which is that TDCJ did not have the knowledge or could not have known before October 30th about the sexual harassment. So when it comes to the prompt, whether TDCJ knew or should have known and failed to take prompt remedial action, this Court should consider several factors. And they're laid out in the Williams v. Bold, excuse me, Williams, Boldware v. Denton County case, including that TDCJ took the allegation seriously. It conducted a prompt and thorough investigation. It implemented remedial and disciplinary measures based on the results. And most importantly, that the action was reasonably calculated to stop the harassment. Now, prior to October 30th, 2015, Julia Duenas testified that there was no reason TDCJ should have known or could have known of the sexual harassment. It is undisputed that there was a consensual personal relationship between Duenas and Arellano prior to that date. I think the deposition testimony is well-versed in kind of how their relationship progressed, how it got tumultuous on the personal side. But that does not mean that TDCJ knew that there was any unwelcome or discourteous conduct of a sexual nature towards her. And on page 29 of Appley's brief, there's a long string cite of all the evidence showing that TDCJ could not and should not have known prior to October 30th. Now, Ms. Duenas' argument is that Warden Aminette had made some comment that should impute knowledge on TDCJ. And that testimony about Warden Aminette's comments are on the record on page 287 and 294. But I think it's important to look at the broad context of how that deposition testimony came about. Ms. Duenas testified that Warden Aminette made the comment, I knew, I just had to hear it from you. And that was in response to a question about having a personal relationship with Aaron Arellano, not sexual harassment. Then later on the record on page 294, she said the comment was, I knew something was going on. I just needed you to clear that up. Then there was a discussion about how Warden Aminette continued to tell Ms. Duenas that officers and other employees could date within TDCJ. She then talks about how Warden Aminette took it seriously. And she acknowledged in the deposition, it's page 116, lines 2 through 10, she acknowledged that the comment that Warden Aminette made to her was not about harassment, but about the personal relationship. So there is no evidence, and it's her burden, there's no evidence to show that TDCJ had knowledge that it was harassing conduct in violation of TDCJ policy. Well, and two days later, he told her to file a complaint, right? I'm sorry? Didn't he tell her to file a complaint or helped her file a complaint shortly afterwards? That immediate day. So she reported on October 30, 2015, to Captain Aguilera. Captain Aguilera took her to see Warden Aminette, and then they immediately brought her to the Human Resources Office at the Sanchez Unit, and she submitted an EEO complaint, which was sent that day. Now going to, it takes 30 days for TDCJ to interview her. The record will show that the investigator is based out of Huntsville, and the interview occurred at the Sanchez Unit in El Paso. The standard operating procedures of an EEO investigation is in the record. It starts at page 579. There is no deadline by which the investigator needs to go out. There's no hard deadline by which the investigator needs to go out and take that deposition. So I think that's not determinative of that TDCJ was trying to cover it up. There's no evidence that they were trying to cover it up. Instead, they investigated her claims. They interviewed her. In the interview, and this is on, excuse me, page 380 of the record, she was asked, did Adiano force you to perform oral sex on him? And she said, no, it was consensual. The only thing that TDCJ knew, even if she was sexually harassed in other ways, she admitted to a consensual act. After admitting to a personal relationship, she committed to a sexual act on the unit. There were no witnesses. And then Aaron Adiano gave an interview in which he also said that there were two consensual sexual acts on the unit. And Ms. Duenas testified that they didn't talk before their interviews. So they have no witnesses in these two statements saying that she performed consensual acts. Nothing else substantiated her sexual harassment complaint. So TDCJ did a fact-finding inquiry, and then they wrote disciplinaries against both Ms. Duenas and Adiano. Adiano chose to resign in lieu of termination. Ms. Duenas chose to go forward with a disciplinary hearing. On February 4, 2016, when she finds out that she is going to possibly be terminated for her actions, she leaves work and she goes to the hospital. She says that she claims that she was sexually harassed at the hospital. The records didn't show that. Still, there is nothing in the records showing on this date that TDCJ had any knowledge that she had been forced to perform oral sex. It's only on February 9 at the disciplinary hearing when that knowledge is first learned. Warden Whitfield, who was a neutral warden from a different unit who was running the disciplinary hearing with Rosa Rivas, who was the HR representative, immediately stops her disciplinary hearing and allows her to supplement her information. So what she does is she sends in a statement explaining why it was inconsistent. Now, TDCJ has her first statement on December 3 and her second statement on February 9, and they need to make a determination about whether she is guilty of the offense of on-duty conduct of unbecoming of an officer. With no other witnesses, no other evidence to support it, Warden Whitfield, by preponderance of the evidence, which is his standard when reviewing disciplinaries, based on PD22, which is TDCJ's disciplinary policy, he makes a decision based on the preponderance of the evidence that she is guilty of that offense. And he recommends dismissal for that. Then it goes through— That's the warden from the other unit. Who else was on that board? Was it a group? So at the disciplinary hearing, Your Honor, it was Warden Whitfield was the reprimanding authority. Rosa Rivas was in the room. After he makes the recommendation for dismissal, it gets forwarded on, and there are several individuals who go through, and it's looked through several officers and ultimately the executive director. There is—Ms. Duenas did not know any of those individuals who reviewed the recommendation for dismissal. Were they people from her unit or they're outside? No, I'm sorry. People at headquarters, essentially. Yes, they are executive level, mostly based in Huntsville. And so she testified that she did not know any of those individuals personally. They approved her dismissal, and she was dismissed. So the law around this is very simple. The facts are a little dense. But it's undisputed that until October 30th, TDCJ did not know and could not have known about the sexual harassment. And because of that, this court should find—should affirm the district court's ruling. Now, turning to the retaliation aspect of it, for purposes of her claim, TDCJ assumed that she met the prima facie elements of the claim. And so it switched to TDCJ to show a legitimate non-retaliatory reason as to why she was recommend for dismissal. And that was because, again, going back to what I just discussed, on December 3rd, she claimed that she had consensual sex. So even if all of that other stuff happened to her, even if all of that sexual harassment had happened, the unwelcome groping, she still admitted to this consensual act on the unit. And while, yes, it was found in the course of the investigation, that should not excuse her wrongful conduct. Under the frameworks for reviewing a retaliation claim that have been set up by the courts, the district court may well be right. It does seem, though, if you look—the retaliation provision is saying, we don't want employers to discourage employees from reporting misconduct. It does seem like that's the effect of this. I mean, if you're another prison guard at that prison and you see what happened here, I think you're going to be inhibited from reporting something. No, you're going to be inhibited from having offenders. Well, first, TDCJ has a very effective policy in place. It's PD-13. It's prohibiting discourteous conduct of a sexual nature. And it provides multiple avenues for reporting. And she was aware of this. Ms. Duenas was aware of this policy. Now, when she was asked at that December 3 interview, did Ariano force you to perform oral sex, she could have said yes. Instead, she said no, it was consensual. So that was her decision. And now she is creating an issue where she has two conflicting statements, which TDCJ has to determine whether or not she's guilty of this disciplinary hearing. So I don't—to go to your question, Your Honor, I don't think that this would discourage anyone from reporting. If anything, and it's also mandated by policy, it encourages you to be truthful from the outset. I don't think she was fired for being untruthful. She was fired for the first statement, which is I consensually engaged in. And, yes, I mean, I agree that she was dismissed because she had two statements, the first one in which she said it was not consensual and the second one where she said it was, and they couldn't—and by preponderance of the evidence, they found that she was guilty of it, Warden Whitfield did. But it doesn't mean—but it's—the policy still requires the victims or witnesses, for that matter, to be truthful up front. So her making—changing her statement, making it difficult for TDCJ or making— having TDCJ to decide which statement is the truth, I don't think discourages future victims from coming forward. Instead, it is—it's clear that Ms. Duenas, if she was sexually assaulted or if she was forced to perform oral sex, that she should have said, when asked if it was forced, she should have said, yes, it was forced at that time. And we can't say for certain where this case would have gone from there, but I think it's fair to say it probably would have taken a different path. And if the court has no more questions. No, ma'am, I don't think so. We'd ask that this court affirm the district court's grant of TDC's motion for summary and judgment. Thank you. Okay, Mr. Mobs, your rebuttal. Thank you, Your Honor. Just very briefly, I mean, I think it's easy for those of us in this room to say that when the interviewer asked her what happened, she should have told him what happened. But she was in a position where she felt like the interviewer was not listening to her. The interviewer was interrupting her. The interviewer was saying, you couldn't be that naive, could you? The interviewer cut her off. The interviewer shut her down. And so this is not a case arising from a good faith employer investigation to determine what happened. The evidence would allow a jury to find that this case arose because the interviewer went out there with the intent or at least the effect of covering up the harassment, not investigating the harassment. If there are no other questions, I think this is really just, you know, we can talk more about the facts. Most of the TDCGA's argument was about the facts, and there are different versions of the facts and different interpretations of the facts. The summary judgment should be reversed then. Thank you. Yes. Thank you, sir. The court will stand in recess until 9 o'clock tomorrow morning.